IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **CIVIL ACTION NO:** |
| § | |
| **CONTOUR BUCKINGHAM AL LLC,** § | |
| **CONTOUR CALLINGTON AL LLC,** § | |
| **and CONTOUR CARLYLE AL LLC,** § | |
| § | |
| **Defendants.** § | |

## VERIFIED ORIGINAL COMPLAINT

Wells Fargo Bank, N.A ("***Lender***"), for its Verified Original Complaint against Defendants Contour Buckingham AL LLC ("***Contour Buckingham***" or "***Buckingham***"), Contour Callington AL LLC ("***Contour Callington***" or "***Callington***") and Contour Carlyle AL LLC ("***Contour Carlyle***" or "***Carlyle***"; collectively with Buckingham and Callington, the "***Contour Borrowers***"), states as follows:

### INTRODUCTION

1. This lawsuit is a creditor's action by Lender to recover $145,000,000 in secured loans that the Contour Borrowers have failed to repay. The Contour Borrowers own and operate three (3) multi-family communities situated in the Birmingham area comprised of 1,796 residential apartment units (the "***Facilities***"). The subject loans are secured by a first mortgage and assignment of rents covering each of the Facilities, as well as a first lien on all personal property of the Contour Borrowers. In addition to defaulting on their loan repayment obligations, the Contour Borrowers have also failed to pay 2024 ad valorem taxes on the Facilities in excess of $2 million that were due on October 1, 2024, thereby subjecting Lender's collateral to a priming tax

lien and an imminent tax auction if the taxes are not paid before May 6, 2025. Contour Buckingham has also failed to pay federal payroll taxes resulting in the issuance of a recent federal tax levy and Contour Callington has recently become the subject of a state unemployment tax lien against Lender's collateral, which potentially jeopardizes Lender's rights further. Lender seeks legal and equitable relief, including the appointment of a receiver to collect the rents assigned to Lender, manage and preserve Lender's collateral, pay operating expenses and taxes, stabilize the properties and, if warranted in the receiver's business judgment, market them for sale under this Court's supervision.

## PARTIES

2. Lender is a national banking association having its principal place of business and main office in the State of South Dakota. Thus, for the purposes of diversity jurisdiction, Lender is a citizen of the State of South Dakota. *See* 28 U.S.C. 1332(c)(1); *Wachovia v. Schmidt*, 546 U.S. 303, 318 (2006) (for diversity jurisdiction, a national banking association is "located" in and is a "citizen" of the state in which its main office is located).

3. Contour Buckingham is a limited liability company organized and existing under the laws of the state of Delaware, whose sole member is Contour Holding Company LLC. Contour Holding Company LLC is a limited liability company organized and existing under the laws of the state of Michigan. Upon information and belief, the members of Contour Holding Company are David Dedvukaj and Nora Prekelezaj, both of whom are individuals domiciled in the State of Michigan. Thus, for the purposes of diversity jurisdiction, Contour Buckingham is a citizen of the State of Michigan.

4. Contour Callington is a limited liability company organized and existing under the laws of the state of Delaware, whose sole member is Contour Holding Company LLC. Contour

Holding Company LLC is a limited liability company organized and existing under the laws of the state of Michigan. Upon information and belief, the members of Contour Holding Company are David Dedvukaj and Nora Prekelezaj, both of whom are individuals domiciled in the State of Michigan. Thus, for the purposes of diversity jurisdiction, Contour Buckingham is a citizen of the State of Michigan.

5. Contour Carlyle is a limited liability company organized and existing under the laws of the state of Delaware, whose sole member is Contour Holding Company LLC. Contour Holding Company LLC is a limited liability company organized and existing under the laws of the state of Michigan. Upon information and belief, the members of Contour Holding Company are David Dedvukaj and Nora Prekelezaj, both of whom are individuals domiciled in the State of Michigan. Thus, for the purposes of diversity jurisdiction, Contour Buckingham is a citizen of the State of Michigan.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**A. The Buckingham Loan**

8. Contour Buckingham AL LLC ("***Contour Buckingham***" or "***Buckingham***") is the owner of a 563-unit residential apartment complex situated at 114 Aspen Circle, Homewood, Alabama, commonly known as "The Park at Buckingham" (the "***Buckingham Facility***").

9. On or about September 30, 2022, Lender made a term loan to Buckingham in the original principal amount of $60,000,000.00 (the "***Buckingham Loan***").

10. The Buckingham Loan is evidenced by, among other things, that certain Term Loan Note dated September 30, 2022, executed by Buckingham in favor of Lender, as amended by that certain First Amendment to Term Loan Note dated May 31, 2023 (collectively as amended, the *Buckingham Note*"). A true and correct copy of the Buckingham Note is attached hereto as **Exhibit 1**.

11. To induce Lender to make the Buckingham Loan, Buckingham executed a Security Agreement dated September 30, 2022 in favor of Lender, granting Lender a first-priority security interest in all personal property of Buckingham, including, but not limited to, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, and deposit accounts described in the Security Agreement and Schedule 1 to the Security Agreement (collectively, the "*Buckingham Security Agreement*"). A true and correct copy of the Buckingham Security Agreement is attached hereto as **Exhibit 2.**

12. Lender perfected its security interest in the collateral described in the Buckingham Security Agreement through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 20228185712 (the "*Buckingham UCC-1*"). A true and correct copy of the Buckingham UCC-1 is attached hereto as **Exhibit 3.**

13. As further security for Buckingham's obligations to Lender in connection with the Buckingham Loan, Buckingham executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated September 30, 2022, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on October 6, 2022 as Instrument No. 2022104961 (the "*Buckingham Mortgage*"). The Buckingham Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising

the Buckingham Facility, as more particularly described in Exhibit A to the Buckingham Mortgage. A true and correct copy of the Buckingham Mortgage is attached hereto as **Exhibit 4.**

14. The Buckingham Note, the Buckingham Security Agreement, the Buckingham UCC-1, the Buckingham Mortgage, the Buckingham Forbearance Agreement (as hereinafter defined), and any and all other documents evidencing, describing, securing, or relating to the Buckingham Loan are herein referred to as the **"*Buckingham Loan Documents.*"** The real and personal property collateral described in the Buckingham Loan Documents is collectively referred to herein as the **"*Buckingham Collateral*."**

15. Pursuant to the terms of the Buckingham Loan Documents, the Buckingham Collateral secures all of Buckingham's obligations under the Buckingham Loan Documents.

B. **The Callington/Carlyle Loan**

16. Contour Callington AL LLC ("***Contour Callington***" or "***Callington***") is the owner of a 604-unit residential apartment complex situated at 700 Aspen Drive, Birmingham, Alabama, commonly known as "The Park at Callington" (the "***Callington Facility***").

17. Contour Carlyle AL LLC ("***Contour Carlyle***" or "***Carlyle***") is the owner of a 629-unit residential apartment complex situated at 200 Robert Jemison Drive, Birmingham, Alabama, commonly known as "The Park at Carlyle" (the "***Carlyle Facility***" and, collectively with the Buckingham Facility and the Callington Facility, the "***Facilities***").

18. On or about January 27, 2023, Lender made a term loan to Callington and Carlyle in the original principal amount of $85,000,000.00 (the "***Callington/Carlyle Loan***").

19. The Callington/Carlyle Loan is evidenced by, among other things, that certain Term Loan Note dated January 27, 2023 executed by Callington and Carlyle in favor of Lender, as amended by that certain First Amendment to Term Loan Note dated May 31, 2023, and as further

amended by that certain Second Amendment to Term Loan Note dated August 22, 2023 (collectively as amended, the **"Callington/Carlyle Note"**). A true and correct copy of the Callington/Carlyle Note is attached hereto as **Exhibit 5.**

20. To induce Lender to make the Callington/Carlyle Loan, Callington and Carlyle executed a Security Agreement dated January 27, 2023 in favor of Lender, granting Lender a security interest in all of their respective personal property, including, but not limited to, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, and deposit accounts described in the Security Agreement and Schedule 1 to the Security Agreement (collectively, the **"Callington/Carlyle Security Agreement"**). A true and correct copy of the Callington/Carlyle Security Agreement is attached hereto as **Exhibit 6.**

21. Lender perfected its security interest in the collateral described in the Callington/Carlyle Security Agreement through the filing of two (2) UCC financing statements with the Delaware Department of State: (1) U.C.C. Initial Filing No. 20230733096 (the **"Callington UCC-1"**); and (2) U.C.C. Initial Filing No. 20230733195 (the **"Carlyle UCC-1"**). True and correct copies of the Callington UCC-1 and Carlyle UCC-1 are attached hereto as **Exhibits 7 and 8**.

22. As further security for Callington's obligations to Lender in connection with the Callington/Carlyle Loan, Callington executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated January 27, 2023, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on February 7, 2023 as Instrument No. 2023009940 (the **"Callington Mortgage"**). The Callington Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising

the Callington Facility, as more particularly described in Exhibit A to the Callington Mortgage. A true and correct copy of the Callington Mortgage is attached hereto as **Exhibit 9.**

23. As further security for Carlyle's obligations to Lender in connection with the Callington/Carlyle Loan, Carlyle executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated January 27, 2023, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on February 7, 2023 as Instrument No. 2023009941 (the "***Carlyle Mortgage***"). The Carlyle Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising the Carlyle Facility, as more particularly described in Exhibit A to the Carlyle Mortgage. A true and correct copy of the Carlyle Mortgage is attached hereto as **Exhibit 10.**

24. The Callington/Carlyle Note, the Callington/Carlyle Security Agreement, the Callington UCC-1, the Carlyle UCC-1, the Callington Mortgage, the Carlyle Mortgage, the Callington/Carlyle Forbearance Agreement (as hereinafter defined) and any and all other documents evidencing, describing, securing, or relating to the Callington/Carlyle Loan are herein referred to as the "***Callington/Carlyle Loan Documents.***" The real and personal property collateral described in the Callington/Carlyle Loan Documents is collectively referred to herein as the "***Callington/Carlyle Collateral.***"

25. Pursuant to the terms of the Callington/Carlyle Loan Documents, the Callington/Carlyle Collateral secures all of Callington and Carlyle's obligations under the Callington/Carlyle Loan Documents.

C. **The Contour Borrowers' Events of Default, Acceleration, and Forbearance**

26. Buckingham, Callington, and Carlyle (collectively, the "***Contour Borrowers***") have failed to pay and perform their respective obligations under the Buckingham Loan Documents and Callington/Carlyle Loan Documents.

27. The following defaults occurred and remain outstanding under the Buckingham Loan Documents (collectively, the "***Buckingham Pre-Forbearance Defaults***"):

   a. Buckingham failed to remit the May 10, 2024 and June 10, 2024 required payments of principal and interest due under the Buckingham Loan Documents; and

   b. As of the March 31, 2024 test date, Buckingham failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 as required by the Buckingham Loan Documents.

28. Likewise, Callington and Carlyle failed to remit the April 10, 2024, May 10, 2024, and June 10, 2024 scheduled payments of principal and interest due under the Callington/Carlyle Loan Documents (collectively, the "***Callington/Carlyle Pre-Forbearance Defaults***").

29. On June 10, 2024, Lender gave the Contour Borrowers written notice of the Buckingham Pre-Forbearance Defaults and the Callington/Carlyle Pre-Forbearance Defaults. A true and correct copy of the June 10, 2024 written notices are attached hereto as **Exhibits 11 and 12**.

30. As a result of the Pre-Forbearance Defaults, Lender entered into Forbearance Agreements with the Contour Borrowers.

31. Lender entered into a Forbearance Agreement with Buckingham dated June 25, 2024 (the "***Buckingham Forbearance Agreement***"), pursuant to which Lender accelerated the

entire amount due under the Buckingham Loan Documents but agreed to forbear from exercising its rights and remedies on account of the Buckingham Pre-Forbearance Defaults until August 31, 2024. A true and correct copy of the Buckingham Forbearance Agreement is attached hereto as **Exhibit 13**.

32. Under Section 2(a) of the Buckingham Forbearance Agreement, Buckingham agreed to pay the "May 10, 2024 and June 10, 2024 scheduled monthly payments" that were delinquent and "otherwise bring any amounts due or delinquent under the Note current" no later than June 28, 2024. *See* **Exhibit 13, ¶ 2(a).**

33. Lender entered into a Forbearance Agreement with Callington and Carlyle on June 25, 2024 (the "***Callington/Carlyle Forbearance Agreement***"), pursuant to which Lender accelerated the entire amount due under the Callington/Carlyle Loan Documents but agreed to forbear from exercising its rights and remedies on account of the Callington/Carlyle Pre-Forbearance Defaults until August 31, 2024. A true and correct copy of the Callington/Carlyle Forbearance Agreement is attached hereto as **Exhibit 14**.

34. Under Section 2(a) of the Callington/Carlyle Forbearance Agreement, Callington and Carlyle agreed to pay Lender "the April 10, 2024, May 10, 2024, and June 10, 2024 scheduled monthly payments" that were delinquent and "otherwise bring any amounts due or delinquent under the Note current" no later than June 28, 2024. *See* **Exhibit 14, ¶ 2(a).**

  D. **The Contour Borrowers' Forbearance Defaults**

35. Despite ample opportunity to cure their defaults, the Contour Borrowers failed to pay and perform their respective obligations under both the Buckingham Forbearance Agreement and the Callington/Carlyle Forbearance Agreement.

36. In fact, during the time the Contour Borrowers were supposed to be curing their pre-existing defaults under their respective Forbearance Agreements, the Contour Borrowers added additional defaults under both the Buckingham Loan Documents and the Callington/Carlyle Loan Documents.

37. Buckingham failed to pay and perform its respective obligations under the Buckingham Forbearance Agreement and added additional defaults under the Buckingham Loan Documents, including, without limitation, the following (collectively, the "***Buckingham Forbearance Defaults***"):

    a. Contour Buckingham failed to remit required payments of principal and interest due under the Buckingham Loan Documents;

    b. Contour Buckingham failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 for the March 31, 2024, June 30, 2024, September 30, 2024, and December 31, 2024 calendar quarters; and

    c. Contour Buckingham failed to pay the 2023 and 2024 real property taxes assessed against the Buckingham Mortgage Property.

38. Similarly, Callington and Carlyle failed to pay and perform their respective obligations under the Callington/Carlyle Forbearance Agreement and added multiple defaults under the Callington/Carlyle Loan Documents, including, without limitation, the following (collectively, the "***Callington/Carlyle Forbearance Defaults***"):

    a. Callington and Carlyle failed to remit required payments of principal and interest due under the Callington/Carlyle Loan Documents;

    b. Callington and Carlyle failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 for the June 30, 2024, September 30, 2024, and December 31, 2024 calendar quarters; and

    c. Callington and Carlyle failed to pay the 2023 and 2024 real property taxes assessed against the Callington and Carlyle Mortgaged Properties.

39. On February 10, 2025, Lender gave the Contour Borrowers written notice of their Forbearance Defaults under both the Buckingham Loan and the Callington/Carlyle Loan. Lender declared the entire amounts outstanding on both loans to be immediately due and payable and demanded payment in full of the Loans from the Contour Borrowers. True and correct copies of the February 10, 2025 notices of acceleration and demand for payment are attached hereto as **Exhibits 15 and 16**.

40. The Contour Borrowers have failed and refused to pay their indebtedness to Lender and remain in default under both the Buckingham Loan Documents and Callington/Carlyle Loan Documents (collectively "***the Contour Loans***"). As a result, all amounts owing under the Contour Loans are immediately due and payable to Lender.

41. The Contour Loans are secured by the Buckingham Collateral and the Callington/Carlyle Collateral (collectively, the "***Contour Collateral***"). In violation of Sections 4.2 and 4.4 of the Contour Mortgages, the Contour Borrowers have permitted tax liens to accrue against the Contour Collateral which are harming Lender's rights and interests therein. Without limitation, the Contour Borrowers have failed to pay the 2024 ad valorem taxes on the Contour Collateral that were due on October 1, 2024 in the amount of $2,058,500, thereby subjecting the Contour Collateral to a tax auction on or about May 6, 2024; Contour Buckingham has recently become the subject of a recent federal tax levy in the amount of $100,525.69; and Contour

Callington has recently become the subject of a state unemployment tax lien in the amount of $83,466.46. True and correct copies of the Contour Borrowers' aforementioned unpaid tax obligations and liens are attached hereto as **Exhibits 17, 18 and 19**.

42. Contour Callington and Contour Carlyle have reported to Lender that they had net operating income for 2024 that exceeded their loan payment obligations to Lender for 2024 by over $630,000, yet they failed to remit all required loan payments to Lender. This fact suggests that these Contour Borrowers may be diverting rents from the Facilities (which are Lender's collateral) for purposes unrelated to the preservation and operation of the Facilities, thereby subject Lender to further harm.

43. As of April 25, 2025, the amount due under the Buckingham Loan Documents (exclusive of attorneys' fees and other costs of collection) was $62,186,155.24, which consists of $58,878,226.00 in unpaid loan principal and $3,307,929.24 in accrued interest thereon. Interest, fees, legal fees, collection costs, and other charges continue to accrue in accordance with the terms of the Buckingham Loan Documents. Without limitation, interest continues to accrue at the default rate of interest in the amount of $16,907.90 per day.

44. As of April 25, 2025, the amount due under the Callington/Carlyle Loan Documents (exclusive of attorneys' fees and other costs of collection) was $88,037,553.28, which consists of $84,029,452.01 in unpaid loan principal and $4,008,101.27 in accrued interest thereon. Interest, fees, legal fees, collection costs, and other charges continue to accrue in accordance with the terms of the Callington/Carlyle Loan Documents. Without limitation, interest continues to accrue at the default rate of interest in the amount of $24,597.33 per day.

45. Pursuant to the Buckingham Loan Documents and the Callington/Carlyle Loan Documents, the Contour Borrowers are also liable for the costs and expenses incurred by Lender

in connection with the Contour Borrowers' obligations under all the Contour Loans, including, without limitation, attorneys' fees and other costs of collection and/or enforcing the Contour Loans, and costs of insuring, protecting, maintaining, or disposing of the Contour Collateral, which costs and expenses continue to accrue.

## COUNT I
## Breach of Contract (against Buckingham)

46. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

47. The Buckingham Loan Documents are valid and enforceable contracts.

48. Lender has fulfilled all contractual obligations owed to Buckingham under the Buckingham Loan Documents.

49. Buckingham has defaulted under the Buckingham Loan Documents by, among other things, failing to make payment in full of all amounts due and owing under the Buckingham Loan Documents to Lender, despite numerous opportunities to do so, and allowing tax liens to accrue against the Facilities.

50. Buckingham's failure to pay all amounts due and owing to Lender and other defaults enumerated hereinabove constitute a breach of the Buckingham Loan Documents and, as a result, Lender is entitled to recovery of all amounts owed from Buckingham on account of such breach.

## COUNT II
## Breach of Contract (against Callington and Carlyle)

51. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

52. The Callington/Carlyle Loan Documents are valid and enforceable contracts.

53. Lender has fulfilled all contractual obligations owed to Callington and Carlyle under the Callington/Carlyle Loan Documents.

54. Callington and Carlyle have defaulted under the Callington/Carlyle Loan Documents by, among other things, failing to make payment in full of all amounts due and owing under the Callington/Carlyle Loan Documents to Lender, despite numerous opportunities to do so, and allowing tax liens to accrue against the Facilities.

55. Callington and Carlyle's failure to pay all amounts due and owing to Lender and other defaults enumerated hereinabove constitute a breach of the Callington/Carlyle Loan Documents and, as a result, Lender is entitled to recovery of all amounts owed from Callington and Carlyle on account of such breach.

## COUNT III
**Unjust Enrichment (against all Defendants)**

56. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

57. The Contour Borrowers each accepted and received the benefits of, and were substantially benefited by, the Contour Loans from Lender. The Contour Borrowers knew, or should have known, that Lender expected and was entitled to repayment of the Contour Loans.

58. Lender is entitled to recover from Contour Borrowers, jointly and severally, under the doctrines of quantum meruit and/or unjust enrichment in an amount of the reasonable value of the principal owed under the Contour Loans, plus outstanding accrued interest thereon, late charges, expenses of collection, including attorneys' fees, other legally recoverable costs under the Contour Loans, and the costs of this action.

4901-8421-9185.3

## COUNT IV
## Appointment of a Receiver

59. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

60. This Court has the legal and equitable power to appoint a receiver to take possession of the Contour Collateral.

61. Pursuant to Rule 66, this Court is authorized to appoint a receiver over the Contour Collateral.

62. The appointment of a receiver to take control of and manage the Contour Collateral is necessary and proper under the circumstances to preserve the Collateral and to control the operations of the Contour Borrowers, including without limitation the collection and expenditure of the Contour Borrowers' rents.

63. In the instant case, Lender is entitled to the appointment of a receiver both under the express terms of the Contour Loans and because the equitable considerations weigh heavily in favor of such appointment.

64. <u>First</u>, the Contour Borrowers expressly agreed that, upon an event of default, Lender is entitled as a matter of right to the appointment of a receiver to take control of the Contour Collateral, including, but not limited to, the right to receive the rents, issues, and profits flowing from the Contour Collateral.

65. Specifically, Sections 5.2 of Buckingham Mortgage, the Callington Mortgage, and the Carlyle Mortgage provide:

> Upon the occurrence of any Default, and at any time thereafter, [Lender] shall have all of the following rights and remedies: … (d) To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Subject Property as a matter of strict right and without regard to: (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the

Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Mortgager consents to such appointment.

*See* Exhibits 4, 9, and 10.

66. <u>Second</u>, in addition to being contractually entitled to the appointment of a receiver, the appointment of a receiver to take control of and manage the Contour Collateral is necessary and proper because the equitable considerations weigh heavily in favor of such appointment.

67. The Contour Borrowers have failed to pay their debt service, property taxes, federal payroll taxes and state unemployment taxes, notwithstanding their collection of the rents being generated by the 1,796 apartment units, which rents they previously assigned to Lender.

68. The Contour Borrowers' failure to pay taxes is resulting in tax liens against the Contour Collateral that potentially prime Lender's security interests in the Contour Collateral.

69. As each day passes and the rents from the Facilities assigned to Lender are expended by the Contour Borrowers, the Lender is harmed as those rents can never be recouped or otherwise generated again. Additionally, the Contour Borrowers may be diverting rents away from the Facilities.

70. The Contour Collateral is being subjected to and in imminent danger of waste, loss, dissipation and impairment unless a receiver is immediately appointed and unless that receiver is allowed, among other things, to assume control of operations of the Contour Borrowers and to take possession of the Contour Collateral, including the collection and expenditure of the rents assigned to Lender.

71. As a result, a receiver is necessary to manage, protect, maintain, preserve and operate the Facilities and the Contour Collateral, to collect the assigned rents and ensure that they are properly utilized to pay the operating expenses of the subject facilities, to market the businesses

and Contour Collateral for sale, and to apply any amounts collected to, among other things, the costs and fees incurred by the Contour Borrowers and to the indebtedness described herein.

72. Absent the appointment of a receiver, Lender lacks legal remedies sufficient to enforce its rights under the terms of the Contour Loan Documents.

73. The appointment of a receiver will do more good than harm to the interested parties.

74. The interests of Lender and other interested parties will be well served by the appointment of a receiver.

75. Lender requests that the receiver shall, at the Contour Borrowers' expense, have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to manage, restore, repair, maintain, hold, rent, lease, operate, sell, or otherwise use or permit the use of the Contour Collateral, subject to Lender's approval.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Lender respectfully requests the following relief:

i. That the Court enter judgment in favor of Lender and against the Contour Borrowers, jointly and severally, for, without limitation, the principal indebtedness outstanding under their respective Contour Loans, accrued and accruing interest thereon, late charges, Lender's costs of collection (including, without limitation, attorneys' fees and expenses), any and all other amounts recoverable under the applicable Contour Loan Documents and the costs of this action;

ii. That the Court appoint a receiver to take possession and control of the Contour Collateral; to maintain and preserve the Contour Collateral, including stabilizing the operation of the Facilities; that the Court grant the receiver all of the powers, duties, authority, and protections ordinarily granted to a receiver and necessary to possess, maintain, and preserve the Contour Collateral, including, without limitation, the power to sell the Contour Collateral, or any part

thereof, pursuant to 28 U.S.C. § 2001, *et seq.*, in accordance with such terms as are hereafter approved by Lender and the Court;

   iii. That the Court award Lender such other and further relief as this Court deems just and proper.

            Respectfully submitted,

            **BRADLEY ARANT BOULT CUMMINGS LLP**

      BY: */s/ N. Chris Glenos*
         **N. CHRISTIAN GLENOS**
         **Bar Number: ASB-0784-L48N**
         **MACY WALTERS**
         **Bar Number: ASB-4358-E175**
         One Federal Place
         1819 Fifth Avenue North
         Birmingham, AL 35203-2104
         Telephone: (205) 521-8000
         cglenos@bradley.com
         mwalters@bradley.com

         ATTORNEYS FOR WELLS FARGO BANK

*PLEASE SERVE THE DEFENDANTS*
*VIA PERSONAL SERVICE AS FOLLOWS*:

Contour Buckingham AL LLC
c/o CT Corporation System, Registered Agent
2 North Jackson Street - Suite 605
Montgomery, AL 36104

Contour Callington AL LLC
c/o CT Corporation System, Registered Agent
2 North Jackson Street - Suite 605
Montgomery, AL 36104

Contour Carlyle AL LLC
c/o CT Corporation System, Registered Agent
2 North Jackson Street - Suite 605
Montgomery, AL 36104

4901-8421-9185.3

## VERIFICATION

I, David Arreola, Executive Director, Real Estate Managed Assets Group, of Wells Fargo Bank, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the factual allegations set forth in the above *Verified Original Complaint* are true and accurate to the best of my knowledge, information, and belief.

_____
DAVID ARREOLA